IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) No. 20-mc-103 |
| Frank G. Fina | ) |

## MEMORANDUM OPINION

Thomas E. Carluccio, LAW OFFICE OF THOMAS E. CARLUCCIO, Plymouth Meeting, PA; Joseph E. McGettingan, III, MCANDREWS, MEHALICK, CONNOLLY, HULSE AND RYAN P.C., Berwyn, PA – Attorneys for Respondent

July 20, 2020

**PER CURIAM[1]**

Presently before the Court is a disciplinary matter involving Respondent Frank G. Fina. The Supreme Court of Pennsylvania suspended Mr. Fina from the practice of law in Pennsylvania for a year and a day for violation of Pennsylvania Rule of Professional Conduct 3.10. *Office of Disciplinary Counsel v. Fina*, 225 A.3d 568 (Pa. 2020) (per curiam). Pursuant to District of Delaware Local Rule 83.6(b)(1), Mr. Fina has been suspended from practice in this Court since his suspension in Pennsylvania.

Mr. Fina claims that discipline in this Court identical to that imposed in Pennsylvania is unwarranted under Local Rule 83.6(b)(5). Having undertaken the analysis required, the Court agrees. As set forth below, Mr. Fina's suspension from practicing law in this Court is lifted.

**I.      BACKGROUND**

Mr. Fina has been a member of the Bar of the Commonwealth of Pennsylvania since 1994. During his legal career, Mr. Fina has worked with the United States Department of Justice as an Assistant United States Attorney; as First Assistant District Attorney for Union County; as a Senior Deputy Attorney General for Capital Litigation with the Office of the Attorney General of the Commonwealth of Pennsylvania ("OAG"); as the Chief Deputy Attorney General for the Public Corruption, Criminal Prosecutions, and Child Predator sections of OAG; and as an Assistant District Attorney for Philadelphia. (D.I. 5 at 10-11). After he left government service, Mr. Fina began working in private practice. Prior to the disciplinary proceedings leading to the matter before this Court, Mr. Fina had not been subject to attorney discipline. (D.I. 5 at 11).

---

[1] On July 17, 2020, Chief Judge Stark assigned this matter to Judge Noreika to deliver this opinion for the Court.

### A. The Pennsylvania Disciplinary Proceedings

The conduct at issue relates to Mr. Fina's actions in connection with cases arising from the Penn State child abuse scandal. Mr. Fina led the investigation of Penn State assistant football coach Jerry Sandusky. As part of the investigation, OAG subpoenaed three Penn State administrators (Gary Schultz, Timothy Curley, and Graham Spanier) to testify before a statewide investigative grand jury assembled in response to the scandal. The three administrators were represented before the grand jury by Penn State general counsel Cynthia Baldwin.[2]

On October 2, 2012, Ms. Baldwin herself was subpoenaed to testify before the grand jury. The subpoena that issued to Ms. Baldwin bore the name and contact information of Bruce Beemer, Mr. Fina's supervisor. It was also signed by Judge Barry Feudale, the supervising judge for the Penn State child abuse investigating grand jury. Mr. Fina's name did not appear on Ms. Baldwin's subpoena.

Prior to Ms. Baldwin's testimony, on October 22, 2012, Judge Feudale held a hearing about the permitted scope of her testimony. During that hearing, Mr. Fina repeatedly represented to Judge Feudale that he would not invade any privilege that was claimed or could be claimed by the three administrators, and specifically stated that he would not question Ms. Baldwin about Mr. Schultz's or Mr. Curley's "testimony before the grand jury, and any preparation for or follow-up they had" with her. *See* D.B. R&R[3] at 11 ¶¶ 39-41 (D.I. 5, App. 4 at 1750a-51a); *accord*

---

[2] Ms. Baldwin is a former justice of the Supreme Court of Pennsylvania. As she was not acting in a judicial capacity in this matter, the Court refers to her as Ms. Baldwin.

[3] The Report and Recommendations of Disciplinary Board of the Supreme Court of Pennsylvania Re: Office of Disciplinary Counsel v. Frank G. Fina (D.I. 5, App. 4 at 1739a-78a) is referred to as "D.B. R&R" and the Report and Recommendation of the Hearing Committee Re: Office of Disciplinary Counsel v. Frank G. Fina (D.I. 5, App. 4 at 1722a-38a) is referred to as "H.C. R&R."

Transcript of October 22, 2012 Conference at 5-6, 10-11, 13 (D.I. 5, App. 1 at 7a-9a). Judge Feudale allowed the testimony of Ms. Baldwin to go forward based on this stipulation – that Mr. Fina would not question Ms. Baldwin about her representation of the Penn State administrators. *See* D.B. R&R at 11 ¶ 42, 21-22 (D.I. 5, App. 4 at 1751a, 1762a); *accord* Transcript of October 22, 2012 Conference at 11:25 – 12:6 (D.I. 5, App. 1 at 8a). On October 26, 2012, despite his earlier representations to Judge Feudale, Mr. Fina questioned Ms. Baldwin about her communications with the three administrators.[4] *See, e.g.*, D.B. R&R at 11-15 ¶¶ 44-49 (D.I. 5, App. 4 at 1751a-55a) (quoting passages from Ms. Baldwin's grand jury appearance)).

More than five years later, on January 10, 2018, the Pennsylvania Office of Disciplinary Counsel ("the ODC") filed a petition ("the ODC Petition") alleging that Mr. Fina had violated Pennsylvania's Rule of Professional Conduct ("RPC") 3.10. RPC 3.10 states:

> A public prosecutor or other governmental lawyer shall not, without prior judicial approval, subpoena an attorney to appear before a grand jury or other tribunal investigating criminal activity in circumstances where the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney/witness.

The Explanatory Comment accompanying RPC 3.10 further provides:

> It is intended that the required "prior judicial approval" will normally be withheld unless, after a hearing conducted with due regard for the need for appropriate secrecy, the court finds (1) the information sought is not protected from disclosure by Rule 1.6, the

---

[4] Mr. Fina disputes that Ms. Baldwin represented the three administrators in their personal capacities and that the communications asked about were privileged. The first judge to review the issue agreed with him. (*See* D.I. 5 at 22 ¶ 47 (citations omitted)). The Superior Court in Pennsylvania, however, overturned that decision. (*Id.* at 23 ¶ 50 (citations omitted)). Mr. Fina asserts that the Superior Court decision was erroneous and should have been appealed (but was not for political reasons). (*E.g.*, *id.* at 27 ¶¶ 75-76 (citations omitted)). Even if that were so, the Pennsylvania Supreme Court ultimately determined that Ms. Baldwin "represented Curley, Schultz, and Spanier in their personal capacities at the time of their grand jury testimony." *Office of Disciplinary Counsel v. Baldwin*, 225 A.3d 817, 832-37 (Pa. 2020).

3

>attorney-client privilege or the work product doctrine; (2) the evidence sought is relevant to the proceeding; (3) compliance with the subpoena would not be unreasonable or oppressive; (4) the purpose of the subpoena is not primarily to harass the attorney/witness or his or her client; and (5) there is no other feasible alternative to obtain the information sought.

On June 14, 2018, July 27, 2018, and August 1, 2018, a Hearing Committee ("the Hearing Committee" or "the Committee") comprised of three Pennsylvania attorneys held hearings regarding the ODC Petition. (*See* D.I. 5 at 32a-939a). During those hearings, the ODC called one witness – Lawrence Fox, Esquire – as an expert on legal ethics in Pennsylvania and elsewhere, and entered a number of documents into the record.[5] During the hearings, Mr. Fina testified and called three additional witnesses – Richard H. Sheetz (former Executive Deputy Attorney General of Pennsylvania), Amy Zapp (Chief Deputy Attorney General of Pennsylvania), and Ms. Baldwin. The Hearing Committee issued its Report and Recommendation on December 28, 2018 concluding that Mr. Fina "did not violate Rule of Professional Conduct 3.10." *See* H.C. R&R at 17 (D.I. 5, App. 4 at 1738a). In doing so, the Hearing Committee stated:

>To satisfy the first element of the Rule 3.10, the ODC must prove that Respondent subpoenaed an attorney. The subpoena at issue does not bear Respondent's name as the requesting Deputy Attorney General, but that of his superior, Bruce Beemer. The ODC did not offer any evidence that Respondent issued the subpoena to Ms. Baldwin or even caused it to be issued. Under Rule 3.10, the forbidden action is subpoenaing an attorney without prior judicial approval . . . . Here, there is no proof that Respondent committed the action of subpoenaing Ms. Baldwin. Nor is there proof that Rule 3.10 is nevertheless applicable to Respondent despite the fact that he did not issue the subpoena. Without such proof, the ODC cannot make out a violation of Rule 3.10.

---

[5]  Mr. Fina argues that these documents were not authenticated and the ODC failed to comply with the Pennsylvania Rules of Evidence as required for such proceedings. (*E.g.* D.I. 5 at 32-33 ¶¶ 99-100). Mr. Fina, however, made those objections to the Hearing Committee, and that Committee overruled his objections. (*See, e.g.*, D.I. 5 at 26 ¶ 67 (citing to various sections of hearing transcript where objections were raised); *id.*, App. 1 at 3a ("HC CHAIR DETERMINATION ODC'S EXHIBITS 1-36 ADMITTED INTO RECORD")).

4

> Regulations that are "penal in nature" must be "strictly construed." . . . Because Rule 3.10 is clearly penal in nature, it must be strictly construed.

*Id.* at 16 (citations omitted) (D.I. 5, App. 4 at 1737a).

Both the ODC and Mr. Fina then filed exceptions to the Hearing Committee's Report and Recommendation with the Disciplinary Board of the Supreme Court of Pennsylvania ("the Disciplinary Board" or "the Board"), along with oppositions to each other's exceptions. After a hearing,[6] the Disciplinary Board issued its own Report and Recommendations concluding that Mr. Fina violated RPC 3.10. (*See* D.I. 5, App. 4 at 1739a-76a). It based this conclusion on the finding that "OAG is the prosecutor referred to in the rule," "OAG as the prosecutorial body and through its representatives, issued the subpoena," and Mr. Fina "represented OAG at all relevant times." *See* D.B. R&R (D.I. 5, App. 4 at 1764a-65a).

Mr. Fina petitioned the Supreme Court of Pennsylvania to allow argument on exceptions to the Board's Report and Recommendations. That petition was granted. After briefing and oral argument, on February 19, 2020, the Supreme Court entered the Order at issue here directing that Mr. Fina be suspended. *Office of Disciplinary Counsel v. Fina*, 225 A.3d 568 (Pa. 2020) (per curiam). In a concurring statement, Justice Wecht adopted the Disciplinary Board's conclusions regarding the meaning of "a public prosecutor" in RPC 3.10. *Id.* at 569-70 (Wecht, J., concurring).[7]

---

[6] This Court does not have a record of the hearing before the Disciplinary Board. Mr. Fina has represented that no record was made. (*See* D.I. 5 at 30 ¶ 90).

[7] Justice Donohue joined Justice Wecht's concurrence. *Office of Disciplinary Counsel v. Fina*, 225 A.3d at 568.

### B.     Proceedings in the District of Delaware

Mr. Fina served as defense counsel in a criminal matter in this Court in 2018. In connection with that matter, he submitted a certificate of good standing and entered his appearance. On March 19, 2020, Mr. Fina filed in this Court a copy of the February 19, 2020 Order of the Supreme Court of Pennsylvania suspending him from the practice of law in Pennsylvania for one year and one day for violation of RPC 3.10. (D.I. 1). On April 1, 2020, pursuant to Local Rule 83.6(b), this Court ordered Mr. Fina to show cause as to why it should not impose reciprocal discipline identical to that imposed by the Pennsylvania Supreme Court. (D.I. 2). Mr. Fina responded to the Order on April 30, 2020. (D.I. 5).

## II.     LEGAL STANDARD

Local Rule 83.6(b) governs the imposition of discipline reciprocal to that imposed by another court. Pursuant to Local Rule 83.6(b)(2), an "attorney admitted to practice before this Court shall, upon being subjected to public discipline by any other Court of the United States or the District of Columbia, or by a Court of any state, territory, commonwealth or possession of the United States, promptly inform the Clerk [of this Court] of such action." Once the attorney informs the Clerk, the Court must issue an order to show cause as to why it should not impose reciprocal discipline. *See* D. Del. LR 83.6(b)(3). Rule 83.6(b)(5) instructs that the Court must impose identical discipline unless it finds that:

> (A) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (B) There was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (C) The imposition of the same discipline by this Court would result in grave injustice; or

> (D) The misconduct established is deemed by this Court to warrant substantially different discipline.

D. Del. LR 83.6(b)(5).

The United States Supreme Court has instructed that a district court's review of such matters should entail "an intrinsic consideration of the record." *Selling v. Radford*, 243 U.S. 46, 51 (1917). That is to say, "there is no entitlement to a de novo trial before the District Court." *In re Surrick*, 338 F.3d 224, 232 (3d Cir. 2003). Instead, district courts should look at the state record as a whole and determine whether different discipline should be imposed. *Id.* at 231-32; *see also* D. Del. LR 83.6(b)(5).

Additionally, this Court, "like all federal courts, has the power both to prescribe requirements for admission to practice before [it] and to discipline attorneys who have been admitted to practice before [it]." *Matter of Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975). Thus, "although the decisions of state courts in such matters are 'entitled to respect,' they are 'not conclusively binding on the federal courts.'" *In re Surrick*, 338 F.3d at 231 (citing *In re Ruffalo*, 390 U.S. 544, 547 (1968)). The discipline imposed by the state is the starting point of the inquiry, but the Court has a duty "to determine for [itself an attorney's] right to continue to be a member of this Bar." *Selling*, 234 U.S. at 50.

### III.  DISCUSSION

Mr. Fina asserts that all four exceptions to reciprocal enforcement, "individually and collectively apply to this matter and warrant relief from identical discipline" here. (D.I. 5 at 1-2). In arguing for their application, however, he blends many of the issues bearing on each distinct category. The Court discusses each exception below.

### A. <u>**Lack of Due Process**</u>

Mr. Fina argues that the disciplinary procedure in Pennsylvania violated fundamental due process for numerous reasons. (D.I. 5 at 31-38 ¶¶ 94-118). As detailed above, however, Mr. Fina has been afforded the opportunity to submit both written and oral argument to three different disciplinary bodies over the course of almost two years. First, he was afforded the opportunity to (and did) file an Answer to the ODC's Petition for Discipline. Then, he was heard by a three-person Hearing Committee on the matter. At that hearing – which spanned three days spaced out over more than a month – he was allowed to (and did) make objections, engage in cross-examination, and present evidence, including fact witnesses. Next, after the Hearing Committee issued its Report, Mr. Fina was allowed to (and did) file, to the Disciplinary Board, exceptions regarding the Committee's Report and a brief in opposition to exceptions filed by the ODC. Then, a three-person panel of the Disciplinary Board hosted oral argument. Finally, after the Disciplinary Board issued its Report and Recommendations, the Supreme Court of Pennsylvania accepted Mr. Fina's petition for review. There, he was permitted to submit briefing and participate in oral argument. As a result, Mr. Fina had notice and opportunity to be heard on each of the issues he raises on multiple occasions over a period of almost two years. The Court thus finds that he was not denied due process. *See In Re Martin*, No. 14-MC-242, 2015 WL 865451, at *8 (D. Del. Feb. 26, 2015).

### B. <u>**Infirmity of Proof**</u>

Mr. Fina's primary focus in response to the Order to Show Cause appears to be the second exception in Rule 83.6(b)(5) – that this Court should refrain from meting out reciprocal discipline in his case because "[t]here was such an infirmity of proof establishing [his] misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the

8

conclusion on that subject" reached by the Pennsylvania disciplinary process.  *See* D. Del. LR 83.6(b)(5)(B).

"In [Pennsylvania] attorney disciplinary proceedings, the ODC bears the burden of proof of establishing an attorney's misconduct by a preponderance of evidence."  *Office of Disciplinary Counsel v. Pozonsky*, 177 A.3d 830, 838 (Pa. 2018).  Here, Mr. Fina was disciplined for violation of RPC 3.10, which prohibits "a public prosecutor or other government lawyer" from "subpoena[ing]" another attorney "in circumstances where the prosecutor or other governmental lawyer seeks to compel the attorney/witness to provide evidence concerning a person who is or has been represented by the attorney/witness" without prior judicial approval.  Notably, however, none of the entities that reviewed and ruled on this case expressly stated that Mr. Fina "subpoena[ed]" Ms. Baldwin in violation of the rule.

As noted, the Hearing Committee found that:

> The subpoena at issue does not bear [Mr. Fina's] name as the requesting Deputy Attorney General, but that of his superior, Bruce Beemer.  The ODC did not offer any evidence the [Mr. Fina] issued the subpoena to Ms. Baldwin or even caused it to be issued.

H.C. R&R at (D.I. 5, App. 4 at 1737a).  The Disciplinary Board, despite its ultimate conclusion, appears to have agreed that Mr. Fina did not "issue the subpoena."  In its Report and Recommendations, the Board distinguished between the "prosecutor who issued the subpoena" and the prosecutor who "secured" "the prior judicial approval," and made clear that it viewed Mr. Fina as the latter, stating:

> OAG, as the prosecutorial body and through its representatives, issued the subpoena to Ms. Baldwin and [Mr. Fina] as OAG's representative, appeared at the October 22, 2012 conference before Judge Feudale and questioned Ms. Baldwin at her October 26, 2012 grand jury appearance.  The language of RPC 3.10 does not require that the prior judicial approval for a lawyer to testify be secured by the same prosecutor who issued the subpoena . . . .  For the purposes of the instant matter, it is of no moment that Respondent did not

9

    personally issue the subpoena under his name; the record supports
    the conclusion that he represented OAG at all relevant times.

D.B. R&R at 24-25 (D.I. 5, App. 4 at 1764a-65a). The Board never expressly stated that Mr. Fina's actions – representing OAG to secure Judge Feudale's approval and to question Ms. Baldwin at her grand jury appearance – constitute "subpoena[ing]" under RPC 3.10.

  Although not stated, the Pennsylvania Supreme Court Order implies that Mr. Fina's involvement with Ms. Baldwin's subpoena – representing OAG at the October 22, 2012 conference and questioning Ms. Baldwin during her grand jury appearance – constituted "subpoena[ing]" Ms. Baldwin under RPC 3.10.[8] In explaining his reasoning, Justice Wecht compared the Hearing Committee's conclusion "that, because Fina's name was not listed on the subpoena issued to Baldwin, Fina had not committed the threshold act of subpoenaing an attorney," with the Disciplinary Board's finding that "'a public prosecutor' in the Rule encompasse[s] the OAG as the prosecuting body." *Office of Disciplinary Counsel v. Fina*, 225 A.3d at 569-70 (Wecht, J., concurring). Justice Wecht adopted the latter interpretation because, in his view, "the Hearing Committee's interpretation of the Rule is untenable, as it would provide an easy opportunity for a prosecutor to avoid the consequences of Rule 3.10 by the simple artifice of asking another attorney in the office to issue the subpoena." *Id.* He then concluded that Mr. Fina violated RPC 3.10 because he represented OAG before Judge Feudale and during Ms. Baldwin's grand jury appearance, and made significant misrepresentations to Judge Feudale in doing so. *Id.* at 571-72.

---

[8]  The Court also notes that this is not the first time that the Disciplinary Board of the Supreme Court of Pennsylvania has advocated that RPC "3.10 is concerned with the *service* of subpoenas" rather than "*issuance*." *See Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 975 F.2d 102, 108 (3d Cir. 1992).

10

The Supreme Court of Pennsylvania is charged with interpreting the Pennsylvania Rules of Professional Conduct. *Commonwealth v. Stern*, 549 A.2d 568, 510-11 (Pa. 1997). Deferring to that court's interpretation of its own rules of professional conduct, this Court cannot conclude that there was such an infirmity of proof establishing the misconduct as to leave this Court with the necessary "clear conviction" that Mr. Fina did not violate RPC 3.10. Mr. Fina was undoubtedly involved with the subpoena for Ms. Baldwin's grand jury testimony. He advocated on OAG's behalf to Judge Feudale to allow Ms. Baldwin's grand jury testimony pursuant to the subpoena. During that hearing, Mr. Fina told Judge Feudale, *inter alia*, that he would "not question Baldwin in any way that would invade attorney-client privilege." *See Office of Disciplinary Counsel v. Fina*, 225 A.3d at 571.[9] Nevertheless, there is evidence that when Ms. Baldwin appeared before the grand jury, Mr. Fina did indeed question her about potentially privileged communications with Messrs. Schultz, Curley, and Spanier. *See* D.B. R&R at 11-15 ¶¶ 44-49 (D.I. 5, App. 4 at 1751a-55a).[10] Thus, the fact that Mr. Fina posed such questions despite his representations to Judge Feudale provides evidence that he – despite his statements – "subpoena[ed] [Ms. Baldwin] to

---

[9]     *See also* D.B. R&R at 8-11 ¶¶ 30-43 (D.I. 5, App. 4 at 1748a-51a); *see also, e.g.*, Transcript of October 22, 2012 Conference at 10:21 – 11:2 (D.I. 5, App. 1 at 8a) ("What I would suggest is that we need not address the privilege issue . . . before [Ms. Baldwin's] testimony, that we are not going to ask questions about . . . Mr. Schultz, Mr. Curley, their testimony before the grand jury, and any preparation for or follow-up they had with Counsel Baldwin.").

[10]    Although Mr. Fina stated on the record during his questioning of Ms. Baldwin at that grand jury that he was not asking about her "conversations with Mr. Schultz or Mr. Curley in preparation for their testimony before the grand jury or after they appeared in the grand jury to the extent it was about their testimony," *see* Transcript of October 22, 2012 Conference at 20:25 – 21:6 (D.I. 5, App. 1 at 17a-18a), he arguably did so by asking her about her discussions with the administrators regarding the subject of the grand jury's investigation, their responses to her requests for subpoenaed materials, and Mr. Spanier's preparation for an interview with OAG in advance of his grand jury testimony, *See* D.B. R&R at 11-15 ¶¶ 44-49 (D.I. 5, App. 4 at 1751a-55a) (quoting passages from Ms. Baldwin's grand jury appearance)).

11

appear before a grand jury . . . to compel [her] to provide evidence concerning [persons] who . . . ha[d] been represented by" her. *See* RPC 3.10.

As such, the Court cannot conclude that Mr. Fina is entitled to relief from suspension in this Court under Rule 83.6(b)(5)(B).

### C. Grave Injustice/Different Discipline

Mr. Fina seemingly links the last two exceptions to Local Rule 83.6(b)(5) both to one another and to his arguments regarding the "infirmity of proof" exception, asserting: "No misconduct or other bases for discipline were established in the Pennsylvania disciplinary process, and to impose discipline or any other prohibition would result in a grave injustice." (*See* D.I. 5 at 59).[11] For the reasons stated above, the Court does not agree; however, it nevertheless finds that the fourth (*i.e.* "substantially different discipline") exception applies.[12]

It is well settled that the state and federal judiciaries draw their power from separate sovereigns and each possesses the exclusive authority to regulate the attorneys practicing before it. "The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included."

---

[11] Mr. Fina makes only one other direct assertion regarding the "grave injustice" exception, which also ties that exception to his "infirmity of proof" arguments. (*See* D.I. 5 at 51 ¶ 153 ("The facts above demonstrate, in part, the clear infirmity of proof employed against Mr. Fina and the grave injustice that would occur by this Court adopting reciprocal discipline based upon such proof and proceedings as occurred in the Pennsylvania disciplinary process.")). He makes no direct arguments regarding the "substantially different discipline exception," addressing it only via his introductory assertion that "Respondent specifically asserts that all four of the above [reciprocal discipline] exceptions, individually and collectively[,] apply to this matter and warrant relief from identical discipline in the D. Del." (*Id.* at 1-2).

[12] Mr. Fina addresses the third and fourth exceptions of Local Rule 83.6(b)(5) together. The Court concludes that his suspension should be lifted based on the latter, and does not specifically address the former.

*Theard v. United States*, 354 U.S. 278, 281 (1957). It is therefore an appropriate exercise of discretion to consider imposing discipline different from the Pennsylvania Supreme Court's.

Several factors dictate that Mr. Fina's actions warrant substantially different discipline here than he received in Pennsylvania. To start, the District of Delaware does not have a direct corollary to RPC 3.10. Attorneys admitted or authorized to practice before this Court must abide by the Model Rules of Professional Conduct of the American Bar Association ("Model Rules"). D. Del. LR 83.6(d). Although the Model Rules bar attorneys from making misrepresentations to the Court, *see* Model Rule 3.3, and impose special duties on prosecutors when they "subpoena a lawyer in a grand jury . . . to present evidence about a past or present client," *see id.* 3.8(e), they do not require prosecutors to obtain judicial approval for such subpoenas. *See id.* It is that requirement of judicial approval that the Pennsylvania disciplinary authorities noted is the core tenet of RPC 3.10 and the basis of Mr. Fina's discipline.[13] *Office of Disciplinary Counsel v. Fina*, 225 A.3d at 571-73 (Wecht, J. concurring) (finding RPC 3.10 "provides an important check against the prosecutor's power" which "is a neutral judge," and determining Mr. Fina committed misconduct by "den[ying] a neutral judge the opportunity to perform [that] vital check"); *see also* D.B. R&R at 24 (D.I. 5,

---

[13]  Indeed, it is unlikely that this Court could adopt RPC 3.10. Although the McDade Act subjects federal prosecutors to the ethical rules (*i.e.* rules of professional conduct) of the states and local federal courthouses where they "engage[] in [their] duties," (28 U.S.C. § 530B), the Third Circuit has held that RPC 3.10 – whether construed as a "rule of professional conduct" or a "rule of procedure" – may not be enforced against federal prosecutors for work undertaken in or supervised by the federal district courts in Pennsylvania. *Baylson v. Disciplinary Bd. of Supreme Court of Pennsylvania*, 975 F.2d 102 (3d Cir. 1992); *id.* at 111-112. The Third Circuit determined that RPC 3.10's requirement of judicial approval for grand jury subpoenas makes it "invalid because its adoption as federal law falls outside the local rule-making authority of the federal district courts, and its enforcement as state law violates the Supremacy Clause of the United States Constitution." *Id.* at 106-107. Moreover, Delaware does not have a rule akin to RPC 3.10 – Delaware's applicable Rule of Professional Conduct mirrors the Model Rules. *See* Delaware Rule of Professional Conduct 3.8(e).

13

App. 4 at 1764a) ("The purpose of [RPC 3.10] is to deter prosecutors from invading the attorney-client and work product privileges, as well as the lawyer-client privilege, without prior judicial approval.") .

Additionally, there were clear differences of opinion on important issues in this case. As noted, the various bodies that reviewed this matter reached opposing conclusions regarding whether Mr. Fina's actions constituted a violation of RPC 3.10. There was also disagreement regarding the privileged nature of the communications Mr. Fina asked Ms. Baldwin about before the grand jury. *See supra* note 3. Moreover, Judge Feudale submitted an affidavit on Mr. Fina's behalf to the ODC during the investigation, in which he averred, *inter alia*: (i) "Ms. Baldwin testified consistent with [his] authorization of October 22, 2012"; (ii) "Ms. Baldwin testified consistent with the colloquy of Mr. Fina of October 22, 2012"; (iii) he "found no fault with the conduct of Mr. Fina in the proceedings involving Ms. Baldwin before [him], and . . . sees no basis for the allegation of misconduct"; and (iv) he "ha[s] specifically considered the claim that [Mr. Fina] violated Rule 3.10 and . . . find[s] this claim baseless." *See* Affidavit of Barry F. Feudale at 2 (D.I. 5, App. 3 at 1330a).

Furthermore, others involved in the grand jury testimony received different or no discipline. When Ms. Baldwin was disciplined for her role in this matter – *i.e.* for violations of multiple Pennsylvania RPCs by testifying to the grand jury regarding privileged communications – she received a public censure without suspension. *See Office of Disciplinary Counsel v. Baldwin*, 225 A.3d 817, 856-59 (Pa. 2020).[14] Justice Dougherty noted this disparity in dissenting from the

---

[14] Although Mr. Fina was a public official at the time and, therefore, subject to increased responsibility, the evidence here indicates that Ms. Baldwin was, like Mr. Fina, aware when she testified that the issue of privilege had yet to be resolved and was reminded by Mr. Fina of that fact during her testimony.

14

sanction imposed on Mr. Fina. *See Office of Disciplinary Counsel v. Fina*, 225 A.3d at 573 (Dougherty, J., concurring in part and dissenting in part) ("I respectfully disagree, . . . that the present circumstances warrant as severe a sanction as the recommended suspension of one year and one day." (*citing Office of Disciplinary Counsel v. Baldwin*, 225 A.3d 817)). Similarly, the attorney whose name appears on the subpoena at issue as the requesting Deputy Attorney General – Bruce Beemer, Mr. Fina's supervisor – appears to have received no discipline. *See* Statewide Investigative Grand Jury Subpoena to Cynthia Brown (D.I. 5, App. 3 at 1308a); *see also* H.C. R&R at 16 (D.I. 5, App. 4 at 1737a). Yet, along with having his name on the subpoena, Mr. Beemer participated in meetings with Ms. Baldwin and her lawyers regarding her potential grand jury testimony in advance of that appearance, *see* H.C. R&R at 11 ¶ 32 (D.I. 5, App. 4 at 1732a), and was present in the grand jury for Ms. Baldwin's testimony, *see* Transcript of October 26, 2012 Grand Jury Testimony of Cynthia Baldwin at 1 (D.I. 5, App. 1 at 13a).

Mr. Fina has also held a license to practice law in Pennsylvania since 1994 and had an unblemished disciplinary record both prior to and since this incident.[15]

Finally, although Mr. Fina was found to have violated RPC 3.10, the decisions recommending and imposing discipline in Pennsylvania focus on his representations to Judge Feudale and the extent to which those representations caused the circumvention of the judicial approval requirement of RPC 3.10. Attorney misrepresentations are serious matters, and the Court does not take them lightly. *See, e.g.*, Model Rule 3.3(a). The Court finds compelling, however,

---

[15] Although the petition for disciplinary action was filed in 2018, the conduct at issue took place in 2012.

that Judge Feudale did not believe that a misrepresentation occurred and supported Mr. Fina in his disciplinary proceedings.[16]

Taking into consideration all of these factors, as well as the severity of the public trust and power afforded to a prosecutor, the Court feels that imposition of identical discipline in this Court is unwarranted.

## IV.    CONCLUSION

Pursuant to Local Rule 83.6(b)(5)(D), Mr. Fina's conduct warrants substantially different discipline in this Court. As such, Mr. Fina's automatic suspension is lifted. An appropriate Order will be entered.

---

[16]    Even if the Court were to find that Mr. Fina's actions violated Model Rule 3.3(a), the Court notes that – by dint of operation of Local Rule 83.6(b)(1) – Mr. Fina has been effectively suspended from practice before this Court for approximately five months. Under the circumstances present here, the Court finds that that would be sufficient.

16